## WITTERS v. SOWLES and others.

*(Circuit Court, D. Vermont.   October 5, 1887.)*

1. FRAUDULENT CONVEYANCES—BY INSOLVENT—KNOWLEDGE OF GRANTEE.
    Defendant was heavily indebted to the bank of which he was cashier, and, within four months of the filing of a petition by a creditor to have him declared an insolvent, (under Rev. Laws Vt. § 1870,) transferred certain securities to the bank, with a view to preferring it over his other creditors.  *Held*, that knowledge on the part of defendant of his insolvency affected the bank of which he was cashier with such knowledge, and made the transfer of such securities void, under Rev. Laws Vt. § 1860, which provides that a conveyance made by an insolvent, or one in contemplation of insolvency, within four months before the filing of a petition of insolvency by or against him, with a view to giving a preference to certain of his creditors, the latter having knowledge of his insolvency, is void.[1]

2. SAME—BY INSOLVENT BEFORE INSOLVENCY—DATE OF TITLE VESTING.
    Other securities were deposited by the cashier with his bank, and an equal amount of his own paper withdrawn.  *Held*, that title to the securities immediately vested in the bank, and, such deposit taking place more than four months before the filing of the petition in insolvency, the transfer did not come within the purview of the statute.

3. SAME.
    Defendant, being indebted to the bank of which he was cashier, transfered to it on the books of another bank the stock which he held in the latter, but did not deposit the certificates for such stock in his own bank, and take up his paper held by it until some time later.  *Held*, that the title of defendant's bank to the stock transferred, dated from the deposit of the certificates with it, and not from the transfer on the books of the other bank.

4. BANKS—NATIONAL BANKS—AUTHORITY OF EXAMINER.
    A national bank examiner is not an officer or agent of the bank, and has no authority, as such, to act for the bank, and cannot bind it by any act done in its behalf.

[1] In the absence of statutory prohibition, a debtor, though known to be in failing circumstances and contemplating an assignment, may prefer one or more of his creditors by conveying property to them to pay or secure a *bona fide* debt, though the effect of the transaction be to defeat the collection of claims equally meritorious.   Gilbert v. McCorkle, (Ind.) 11 N. E. Rep. 296.   See Woonsocket Rubber Co. v. Falley. 30 Fed. Rep. 808, and note.

In Equity.

This case is between the same parties, and based on the same facts, as the case of *Witters* v. *Sowles, ante,* 758, which see for full statement of facts.

*Chester W. Witters* and *Albert P. Cross,* for orator.

*Willard Farrington* and *Henry A. Burt,* for defendants.

WHEELER, J. The orator is receiver of the First National Bank of St. Albans, and the defendants Lewis and Leach are assignees of the estate of the defendant Sowles in bankruptcy. This bill is brought to confirm the title of the orator as receiver to notes and evidences of debt of the face value, on the twenty-ninth day of December, 1883, of about $9,800, and to 255 shares of the capital stock of the National Union Bank of Swanton, and to a contract of the face value of $890, called the Wright contract,—all of which formerly belonged to defendant Sowles, and are claimed by the other defendants as his assignees. They have filed a cross-bill, praying that these securities, or the proceeds of the securities, may be decreed to them. The facts in respect to the insolvency of Sowles, his knowledge of it, the cause which the officers of the bank had to believe it, and the commencement and prosecution of proceedings in insolvency against him, are as stated in the other case between the same parties. According to the testimony, on the twenty-ninth of December, 1883, he got those securities together, and computed their value with a view to using them in payment or security of his indebtedness to the bank. On the twenty-first day of January, 1884, he went to the National Union Bank of Swanton, and transferred his stock in that bank to the First National Bank of St. Albans. On or about the twenty-fifth day of that January he discharged $10,000 of his paper held by the First National Bank of St. Albans, and placed those notes and evidences of debt among the assets of the bank, as the property of the bank, and treated them as bonds, and that item on the books of the bank was increased that amount. On the second day of February, 1884, he discharged $10,000 more of his paper, held by the bank, and put certificates of 255 shares of the stock of the National Union Bank of Swanton among the assets of the bank as its property, and treated them as bonds, and that item was further increased that amount on the books of the bank. The transfer of the bank stock was made by advice of the national bank examiner. These transactions were had without the knowledge of any of the officers or agents of the bank.

The Wright contract was put with the rest, in the latter part of March, and all were found among the assets of the bank when possession was taken by the officers of the government, resulting in this receivership. The petition of May 31, 1884, was presented to the judge of the court of insolvency, asking that the prior petition be proceeded with. There was no reservation of any control over it, but it was left to be proceeded with by the judge in due course, according to his judicial discretion and judgment, and it was filed to be proceeded with accordingly. The delay upon that was the delay of the court. The adjudication of insolv-

ency was made upon the first petition so taken up, and carried along by that. When that petition was presented, there was an active application made to the court, and, when it was so taken into the files of the court to be proceeded with, it was filed within the meaning of that part of the statute of the state relating to insolvency which avoids preferences made within four months of the filing of the petition. Rev. Laws Vt. § 1760.

These conveyances, transfers, or payments were made upon good consideration, to secure or satisfy just debts, and were honest, proper, and lawful, at common law, and were not affected by any statute but this one relating to insolvency proceedings. As that statute, by its terms, did not reach back of four months before the filing of the petitions to be proceeded with, which is considered to be the thirty-first of May, what was done before the thirty-first of January is not affected by it. These notes and evidences of debt are understood to be such that, as between the owner and holder and a purchaser, the ownership of and beneficial interest in them would pass by delivery. When the defendant Sowles, as cashier of the bank, took his own notes from among the assets of the bank, and discharged them as paid, and placed these notes among the assets of the bank, in place of those so discharged, the property in these notes became vested in the bank, and his right to them ceased, as much as if he had put his money among the moneys of the bank, and taken up his notes to the same amount; the title to that, by that act, would have gone to the bank. This was all done and completed several days before the thirty-first of January, and was lawful and proper, so far as any statute undertakes to reach it. The orator appears to be entitled to a decree confirming his title to these notes and evidences of debt. The bank examiner was not an officer or agent of the bank, and he had no authority, as such, to act for the bank in any manner, and could not bind it by any act done or undertaken in its behalf. He represented a department of the government which supervises and controls the banks as to whether in certain cases they shall do business at all or not, but it does none for them, other than to wind up their affairs for their creditors. The examiner makes report to that department to furnish a basis for action with reference to the continuance of the banks in business. His reports might be favorable or otherwise, as any advice he should give might be followed. He doubtless acted for the best interests of the creditors of the bank in giving this advice, but what was done in following it had no more effect than as if it had been done without it. The transfer of the stock on the books of the other bank was without consideration or contract. The certificates were kept by him, and there was nothing on which the bank could stand to hold or enforce ownership of the stock. On the second of February, when he placed the certificates among the assets of the bank as the property of the bank, and took up his obligations to an amount equal to its value, the transfer became complete and valid. The operative part was within the four months, and within the reach of the statute. He did this being in fact insolvent, and with a view to give a preference, as before found. If the

bank had reasonable cause to believe this, the transaction is avoided by the statute. The other officers of the bank did not know of it at the time. When they did know of it, the state of insolvency had so far progressed and made itself apparent that all were affected with knowledge of it. Perhaps they thus had left to the bank the right to repudiate the transaction, and to stand upon the obligations of the paper taken up. If so, and they availed themselves of that right, the stock could be left to go to the defendants; if not, and they stood upon the transaction as made by Sowles, acting for the bank, as well as for himself, they must take his act for the bank as he could perform it, and as if it had been done by any one else affected as he was. This would include his knowledge of his insolvent condition, and the purpose of the transfer. The bank must be affected by the knowledge which the only one acting for it about this transaction had. The transfer of this stock is avoided by the statute. *A fortiori* the transfer of the Wright contract is avoided. The defendants the assignees appear to be entitled to have this stock, and the Wright contract, or the avails of these, decreed to them.

Let there be a decree for the orator confirming his title and right to the notes and evidences of debt, and the avails of them, according to the prayer of the bill; and for the defendants' assignees, that they are entitled to the stock of the Union National Bank of Swanton, and the Wright contract, and the avails of them, and for delivery of the stock and contract if now in the orator's hands, and for an account of the avails if converted, according to the prayer of the cross-bill; without costs to either party.